IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01809-KAS

ELIZABETH A. FLYNN, also known as Elizabeth Anne Flynn,

Plaintiff,

v.

MATT CLARK, Denver Police Department,
RON THOMAS, Denver Police Department,
MARY DULACKI, Denver Department of Safety,
CITY AND COUNTY OF DENVER, and
DENVER CITY ATTORNEY,

Defendants.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on (1) Defendants' Clark, Thomas, and City and County of Denver's **Motion to Dismiss Pursuant to Rule 12(b)(6)** [#22][1]; (2) Defendant Dulacki's **Motion to Dismiss** [#30]; and (3) Plaintiff's **Motion Pursuant to Fed. R. Civ. P. 5(a)(1)(D) to Deny Defendants' Clark, Thomas, and City and County of Denver's Motion to Dismiss** [#23]. The parties filed Responses in opposition to each other's motions. *Clark, Thomas, and Denver's Response* [#24]; *Pl.'s Response* [#25]; *Pl.'s Response* [#31]. Only Defendants filed Replies in support of their respective Motions to Dismiss. *Clark, Thomas, and Denver's Reply* [#27]; *Dulacki's Reply* [#34]. The case has been referred to the undersigned for all purposes on consent of the parties. *Signed*

---

[1] "[#22]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

*Consent/Non-Consent Form* [#28]; *Order of Reference* [#29]. The Court has reviewed the briefs, the case file, and the applicable law. For the reasons stated below, the Defendants' Motions [#22, #30] are **GRANTED** and the Plaintiff's Motion [#23] is **DENIED**.

## I. Background

Plaintiff, who proceeds as a pro se litigant,[2] initiated this action after she tried, unsuccessfully, to report a crime to the Denver Police Department ("DPD"). Plaintiff alleges that on May 26, 2023, she appeared at DPD's District 1 station to report a crime that occurred in 1996. *Am. Compl.* [#9] at 5, ¶ 1. She asserted that she had been kidnapped and falsely imprisoned "under the guise of an illegal, involuntary hospitalization." *Id.* As she described the alleged crime, she mentioned to the officers taking her report that she has multiple sclerosis, delayed complex post-traumatic stress disorder, and a "history of . . . [being] perceived to have a mental health impairment/disability." *Id.*

The desk officer on duty at the station apparently advised Plaintiff that she needed to refile her report with the Sex Crimes Unit because that unit handled kidnappings in 1996. *Id.* ¶ 2. According to Plaintiff, this "directive was subjective entrapment and was meant to outrageously and maliciously revictimize her and trigger her known cPTSD." *Id.* Plaintiff clarified this allegation in one of her Response briefs: "they were miffed that she was wasting their time by trying to pass off an involuntary mental hold as a crime; the misrepresentation via the Sex Crimes Unit was her punishment." *Response* [#25] at 2.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Nevertheless, Plaintiff followed up with a detective in the Sex Crimes Unit, who informed her that the guidance she had received from the desk officer was incorrect. *Am. Compl.* [#9] ¶ 2. At some unidentified point in time, Plaintiff was advised that DPD would not be opening an investigation into the alleged crime.

Plaintiff made a verbal complaint to DPD's Commander of Major Crimes, Defendant Clark. According to Plaintiff, Defendant Clark "regarded her" as having a mental health impairment or disability and told her that she "seemed confused." *Id.* at 5, ¶ 2; 7, ¶ 3. He then wrote a police report containing "materially false statements" about their encounter—including that her conversation with the Sex Crimes Unit detective was "emblematic" of her "erratic behavior." *Id.* at 5-6, ¶¶ 2-3. Plaintiff alleges that Defendant Clark intended to deceive anyone who read the report into thinking that her present "erratic behavior" was part of her history of "unabated mental health impairment/disability" and that such mental health impairment/disability was causing her to try to reframe an involuntary hospitalization as a crime. *Id.* at 6, ¶ 3. Ultimately, Plaintiff claims that she was "excluded from the law enforcement process" and that her referral to the Sex Crimes Unit was intentional revictimization. *Id.*

Plaintiff then filed a citizen's complaint with the Office of the Independent Monitor (OIM) alleging that the above-mentioned incidents amounted to disability discrimination and other violations of her civil rights. *Id.* at 5-6, ¶ 2. Defendant Dulacki, the Chief Compliance Officer for the Department of Public Safety, apparently told Plaintiff that her complaint was "appropriately declined" because the hospital where she was alleged to have been detained was not located in the City and County of Denver and because the alleged crime was 27 years old. *Id.* at 9, ¶ 2; *see also id.* at 14, ¶ 6 (another internal affairs

officer explaining that DPD did not investigate the alleged crime because the hospital in question no longer exists, Plaintiff's account of what occurred does not meet the statutory definition of kidnapping, and the statute of limitations for false imprisonment had passed).

At some point, Plaintiff apparently wrote DPD's Chief of Police, Defendant Thomas, either a letter or a second "OIM complaint" concerning the "falsified" police report. *Id.* at 9-10, ¶¶ 2-3. Plaintiff alleges that Defendant Thomas asked a Crisis Intervention Response Unit caseworker to contact Plaintiff to "see if [she] needed anything." *Id.*; *see also id.* at 11, ¶ 6. The director of the Unit also contacted Plaintiff "to get her to withdraw the known but unprocessed OIM complaint." *Id.* at 10, ¶ 3. Plaintiff alleges that she "felt harassed, intimidated, and once again regarded as a person with a mental health disability during this phone conversation." *Id.*

Plaintiff asserts discrimination and retaliation claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; an equal protection claim pursuant to 42 U.S.C. § 1983; and a state law equal protection claim pursuant to Colo. Rev. Stat. § 13-21-131. *Am. Compl.* [#9] at 4-17. Defendants move to dismiss on the ground that Plaintiff failed to plausibly allege disability discrimination, retaliatory intent, differential treatment of a similarly situated comparator, or any basis for *Monell* liability. *See generally Motions* [#22, #30].

## II. Plaintiff's Motion [#23]

As an initial matter, Plaintiff asks the Court to deny Defendants Clark, Thomas, and City and County of Denver's Motion to Dismiss [#22] on procedural grounds. Namely, the Motion [#22] was not served on Defendant Dulacki in violation of Fed. R. Civ. P. 5(a)(1)(D). *Motion* [#23] at 1. Further, the certificate of service stated that the Motion [#22] was served

on Plaintiff by U.S. mail and by email on September 9, 2025, but it was not in fact e-filed until September 10 or emailed to Plaintiff until September 11. *Id.* at 2.

Defendants Clark, Thomas, and the City and County of Denver concede these technical discrepancies but assert that they are not grounds for denying the Motion [#22]. The Court agrees. Even assuming that Plaintiff may assert a violation of Rule 5(a)(1)(D) on Defendant Dulacki's behalf, she cites no authority (and the Court is aware of none), providing that wholesale denial of a motion on its merits is an appropriate remedy for a violation of Rule 5(a)(1)(D). *See Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 73 (10th Cir. 2005) (holding that the district court did not abuse its discretion in denying a motion for sanctions and a motion to strike a paper filed in violation of Rule 5 because the movant failed to show that the requested relief was appropriate); *see also Glass v. XTO Energy*, No. 1:21-cv-00543-JCH-JMR, 2023 WL 4034182, at *3 (D.N.M. June 15, 2023) ("To be sure, Rule 5's text does not provide a sanction for a failure to serve."); 4B ADAM N. STEINMAN, FEDERAL PRACTICE AND PROCEDURE § 1143 (4th ed. Apr. 2026) ("The consequences of a failure to serve as required by Rule 5 depend on the nature of the paper involved and . . . it is difficult to generalize.").

Further, to the extent that Plaintiff seeks sanctions based on the inaccurate date listed on the certificate of service, she did not comply with Rule 11's procedures for seeking such sanctions. *See* FED. R. CIV. P. 11(c)(2) (A motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Accordingly, the Motion [#23] is **denied**.

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## IV. Analysis

### A. Improper Party

The City and County of Denver argues that the Denver City Attorney is not a proper party to this action for two reasons. First, as a servient agency of the municipal government, the City Attorney's Office cannot be sued separately from Denver itself. *Motion* [#22] at 3. And even if it could, no employee of that office is mentioned or even implicated in this lawsuit. *Id.* The Court agrees. Municipal departments are generally not considered separate legal entities from the local government they serve and thus cannot engage in litigation separately from the municipality unless the municipality "has taken explicit steps to grant the servient agency with jural authority[.]" *Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025) (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)); *Reynolds v. Flynn*, No. 21-cv-01154-RM-NYW, 2022 WL 252327, at *7 (D. Colo. Jan. 27, 2022), *report and recommendation adopted*, 2022 WL 20538911 (D. Colo. Mar. 31, 2022). Plaintiff has made no such showing here.[3] The Denver City Attorney is not a proper party to this action.

### B. ADA Claims

"Title II of the ADA prohibits discrimination by public entities on the basis of disability." *Romero v. Weld Cnty. Sheriff's Off.*, No. 18-cv-02575-RM-NRN, 2021 WL 11684269, at *3 (D. Colo. Mar. 12, 2021); 42 U.S.C. § 12132. Individual government employees may not be sued pursuant to the ADA; only public entities are proper defendants to an ADA claim. *Reyes v. Jensen*, 857 F. App'x 436, 439 (10th Cir. 2021);

---

[3] In her Response [#25], Plaintiff states that the Denver City Attorney was never named as a Defendant in this action, although a review of the operative complaint undermines her statement. *See Am. Compl.* [#9] at 2. Nevertheless, Plaintiff does not appear to oppose dismissal of the City Attorney from this action.

*Smith v. Glanz*, 662 F. App'x 595, 597 (10th Cir. 2016). Therefore, the Court construes Plaintiff's ADA claims as brought against the City and County of Denver only.

Denver argues that Plaintiff has failed to plausibly allege an ADA violation, either directly or by retaliation, for the following reasons: (1) the Tenth Circuit has never held that police investigations are a "municipal service, benefit or program"; (2) the allegedly erroneous redirection of Plaintiff to the sex crimes unit was not a "denial" of a service, benefit, or program; (3) Plaintiff has not plausibly alleged that any decision was made "by reason of a disability"; and (4) Plaintiff has not plausibly alleged any facts giving rise to an inference of retaliation. *Motion* [#22] at 4-8. Because the Court agrees with Denver's third and fourth arguments, the Court need not break new ground on the issue of whether a police investigation is a municipal service, benefit, or program.

To state a viable claim under Title II of the ADA, a plaintiff must allege

> (1) that he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Szeto v. Univ. of Colo.*, No. 22-cv-01592-LTB-SP, 2023 WL 12189274, at *5 (D. Colo. June 16, 2023) (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)).

For purposes of the instant Motion [#22], the Court assumes without deciding that police investigations and OIM investigations are municipal services and that Plaintiff was excluded from those services insofar as DPD and the OIM declined to initiate investigations based on her reports. Even so, Plaintiff has failed to plausibly allege that she was denied these services *by reason of* her disability. In other words, she pleads no facts that would allow the Court to infer that DPD chose not to investigate her report because of her disability, and not for other reasons.

The facts that Plaintiff *does* allege tend to establish the opposite. Indeed, Plaintiff alleges that she was advised that her criminal complaint was not investigated for the following reasons: (1) the hospital where she was alleged to have been detained was not located in the City and County of Denver; (2) the hospital where she was alleged to have been detained no longer exists; (3) Plaintiff's account of what occurred does not meet the statutory definition of kidnapping; and (4) the alleged crime was 27 years old (therefore falling outside the relevant statute of limitations for false imprisonment). *Am. Compl.* [#9] at 9, ¶ 2, 14, ¶ 6. She further alleges that she was advised that her complaints to the OIM were unfounded because DPD's decision not to initiate an investigation was proper. *Id.* at 9, ¶ 2.

Therefore, Plaintiff has not plausibly alleged an ADA discrimination claim. *See Abrams v. Div. of Unemployment Ins.*, No. 24-cv-03390-RMR, 2025 WL 2513607, at *9 (D. Colo. Sept. 2, 2025) ("Simply put, despite all of Plaintiff's verbiage and attempted artful pleading, he has not adequately alleged that there has been any impediment to his access to the Division or his unemployment benefits because of a disability. Instead, he is simply dissatisfied with the determinations made by the Division and frustrated by the forms of communication utilized by the Division.").

Plaintiff's retaliation theory is similarly unavailing. Section 12203 of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" by the ADA, and that it is unlawful to "coerce, intimidate, threaten, or interfere with any individual" on account of her "having exercised or enjoyed" rights protected by the ADA. To state a Title V retaliation claim, Plaintiff must plausibly allege that "(1) she engaged in a protected activity; (2) she

was subjected to an adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Hall v. Fourth Jud. Dist.*, No. 25-cv-01138-NYW-MDB, 2026 WL 1830856, at *8 (D. Colo. June 24, 2026); *see also Glenn v. Davis Sch. Dist.*, No. 1:19-cv-00008-DAK, 2019 WL 5423728, at *3-4 (D. Utah Oct. 23, 2019).

Plaintiff theorizes that the OIM retaliated against her by not investigating her citizen complaints, giving each of her grievances separate tracking numbers, or placing her reports in a "shared database with IA." *Am. Compl.* [#9] at 11-12, ¶¶ 4, 6, 9. As above, Plaintiff fails to allege any facts indicating that the OIM declined to investigate, follow-up, or sufficiently document her complaints *in retaliation for her simply having lodged them*. In other words, Plaintiff fails to allege facts that establish a causal connection between her complaints and the asserted adverse actions. Indeed, the Amended Complaint [#9], on its face, reveals that the OIM declined to take further action because the underlying police conduct was deemed proper. *Id.* at 9, ¶ 2.

Additionally, Plaintiff theorizes that she was subjected to retaliation based on phone calls that she received from the Crisis Intervention Response Unit (which Plaintiff says exists "to improve police response to individuals experiencing mental health crisis"). *Id.* at 14, ¶ 8. Although Plaintiff's allegations concerning this incident are somewhat unclear, as best the Court can decipher, Plaintiff wrote either a letter or a complaint to Defendant Thompson personally concerning "tampering with evidence and falsifying police reports." *Id.* Defendant Thompson asked an outreach coordinator from the Unit to contact Plaintiff to see if she "needed anything." *Id.* Plaintiff and the coordinator missed one another's calls and never connected. *Id.* Approximately a week later, Chris Richardson, the Unit's director, called Plaintiff at Defendant Thompson's request. *Id.* at

14-15, ¶ 9. During the 30-minute call, Richardson tried to "get her to withdraw the known but unprocessed OIM complaint against Defendant Clark." *Id.* at 15, ¶ 9. He asked her several times what she was "going to do" if she didn't "drop the complaint." *Id.* She states that the conversation left her feeling "harassed, intimidated, and once again regarded as a person with a mental health disability." *Id.*

While these allegations come closer to meeting the elements of an ADA retaliation claim, the Court notes several defects. First, Plaintiff's averments are presently insufficient to establish that her letter to Defendant Thompson, which apparently prompted the phone calls, was a protected activity under the ADA. Plaintiff only states that she wrote the Chief of Police a letter about evidence tampering and misleading police reports. *Id.* at 14, ¶ 8. To state a claim for ADA retaliation, Plaintiff must first establish that her letter, and Defendant Thompson's alleged attempt to get her to withdraw it, fell under the ADA's purview at all. Relatedly, Plaintiff's attempt to connect Mr. Richardson's statements to Defendant Thompson, without further factual enhancement, is bare and conclusory. Finally, Plaintiff's description of the things that Mr. Richardson said are ambiguous, making it difficult to assess whether the conversation, as alleged, was materially adverse such that it would have dissuaded a reasonable person from making or supporting a charge of discrimination. *See Duvall v. Putnam City Sch. Dist., Indep. Sch. Dist. No. 1 of Okla. Cnty.*, 530 F. App'x 804, 810 (10th Cir. 2013).

For these reasons, the Court **grants** the Motion [#22] and **dismisses** Plaintiff's ADA claims **without prejudice**. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) ("Ideally, if it is at all possible that the party against whom the dismissal

is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.”).

**C. Equal Protection Claim**

Plaintiff next asserts a claim for disability discrimination in violation of the Equal Protection Clause on the ground that she was “treated differently from other Denver female crime victims over the age of 65 with three disabilities who were perceived to have a mental health impairment/disability.” *Am. Compl.* [#9] at 7, ¶ 3. Defendants move for dismissal on the grounds that (1) the individual Defendants are entitled to qualified immunity; (2) Plaintiff fails to identify a similarly situated comparator; (3) valid, non-discriminatory rationales for the conduct in question are discernable from the face of the Amended Complaint [#9]; (4) any discrimination was justified by a legitimate state interest; (5) Plaintiff’s redirection to the Sex Crimes Unit was, at worst, negligent conduct by a non-party; and (6) Plaintiff has failed to establish *Monell* liability. *Motion* [#22] at 9-15; *Motion* [#30] at 4-10.

“No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.” U.S. CONST. amend. XIV, § 1. The Equal Protection Clause directs “that all persons similarly situated should be treated alike.” *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). “In *City of Cleburne*, the Supreme Court held that disabled individuals are not a suspect or quasi-suspect class.” *Peoples v. Colo. Dep’t of Corr.*, No. 24-cv-02016-CNS-KAS, 2025 WL 2430014, at *6 (D. Colo. Aug. 22, 2025). Therefore, “the Equal Protection Clause requires only that a State have a rational justification for making distinctions between the disabled and nondisabled.” *Id.* (internal quotation marks and citation omitted). Nevertheless, “[t]he Equal Protection Clause’s prohibition against

invidious discrimination against the disabled and irrational distinctions between the disabled and the nondisabled remain." *Id.*

"To show discriminatory effect, as with any Equal Protection claim, a plaintiff must allege facts showing that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class." *Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1303 (D. Colo. 2025) (internal quotation marks and citation omitted). "A plaintiff is 'similarly situated' to other individuals 'only if they are alike in all relevant respects.'" *Id.* (quoting *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018)). Here, Plaintiff makes no specific allegations concerning a female crime victim over the age of 65 with three disabilities who was *not* perceived to have a mental health impairment/disability. Therefore, she necessarily fails to explain how such a comparator would be similarly situated to her in all other material respects besides disability, or how that comparator was treated differently from her. Thus, her theory concerning how she would have been treated if she were not perceived as having a mental health impairment/disability is speculative at best, and her allegations supporting that theory are conclusory. *See Iqbal*, 556 U.S. at 678; *Peoples*, 2025 WL 2430014, at *6.

Further, to the extent that Plaintiff intends to assert a theory of intentional invidious discrimination against those perceived to have a mental health impairment/disability, Plaintiff has not met her burden to plead facts that would allow the Court to infer that Defendants intended to discriminate against her because of her disability. *Peoples*, 2025 WL 2430014, at *6; *Gray v. Sorrels*, 744 F. App'x 563, 573 (10th Cir. 2018). Indeed, her conclusory statement that the Defendants "deliberately and intentionally violated Plaintiff Flynn's right of equal protection" does not pass muster.

Having failed in these respects to state a constitutional violation, the individual Defendants are entitled to qualified immunity. See *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (To determine whether qualified immunity applies, the Court considers (1) whether the officials' "alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right.").

Finally, Plaintiff has failed to plead any facts that would allow the Court to infer that the City and County of Denver can be held liable pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). "A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington County*, 983 F.3d 1166, 1191 (10th Cir. 2020). To state a *Monell* liability claim, a plaintiff must adequately allege "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

Regarding the first element, an official policy or custom may include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

Here, Plaintiff does not concretely identify how the denial of a police or OIM investigation fits within any of the above definitions of an official policy or custom, such that the City and County of Denver can be held liable for the actions of the individual Defendants.

For these reasons, the Court **grants** the Motions [#22, #30] and **dismisses** Plaintiff's § 1983 claim **without prejudice**. *Brever*, 40 F.3d at 1131.

**D. State Law Claim**

Plaintiff asserts her final claim pursuant to Colo. Rev. Stat. 13-21-131, a Colorado statute. *Am. Compl.* [#9] at 16-17. Because the Court has dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over her state law claim at this time. *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court had dismissed all claims over which it has original jurisdiction.").

**E. Final Note**

The Court recognizes that Plaintiff filed Responses [#25, #31] that include far more detail and evidentiary support than her Amended Complaint [#9]. Indeed, the Response [#25][4] reads more like an Amended Complaint in its own right rather than a response to the arguments raised in the Motion [#22]. However, a motion to dismiss tests the sufficiency of the allegations raised in the *operative* complaint. In assessing that question, the Court may not consider any statements of fact or supporting evidence alleged for the first time outside the pleadings, including in Plaintiff's response brief. *See Abdulina v.*

[4] The Court reminds Plaintiff of the undersigned's practice standards, which provide that unless otherwise ordered, parties' motions and responses (unlike Complaints) are limited to fifteen (15) pages and replies are limited to ten (10) pages. D.C.COLO.MJ V(2).

*Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (noting that a plaintiff "cannot amend [his] complaint by adding factual allegations in response to [a d]efendant's motion to dismiss."). In fact, contrary to what Plaintiff might have intended, the inclusion of voluminous additional factual allegations in her response briefs actually *impedes* the Court's ability to answer the narrow question before the Court: whether the current Amended Complaint [#9] is legally sufficient to state a claim. The way for Plaintiff to clarify facts, add details, and provide evidentiary support to bolster her claims is not by submitting a detailed response brief. It is by moving for leave to amend her operative complaint to include such information. Therefore, to the extent Plaintiff believes she can cure the deficiencies that the Court has identified above, she may file a Motion for Leave to Amend that complies with Fed. R. Civ. P. 15 and this District's Local Rule 15.1(b).

## V. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Plaintiff's Motion [#23] is **DENIED**.

IT IS FURTHER **ORDERED** that Defendants' Motions to Dismiss [#22, #30] are **GRANTED** and Plaintiff's claims are **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that the Clerk of Court shall terminate the Denver City Attorney as a party to this lawsuit.

IT IS FURTHER **ORDERED** that Plaintiff may file a Motion for Leave to Amend that complies with Fed. R. Civ. P. 15 and this District's Local Rule 15.1(b) no later than **October 2, 2026**. Her failure to do so by the deadline will result in closure of this case.

Dated: September 11, 2026 BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge